### WRIGHT et al. v. SCOTTEN et al.

### SCOTTEN et al. v. WRIGHT et al.

High Court of Errors and Appeals.   August 4, 1796.

*Wilson's Red Book, 111.*[*]

---

[*] This case is also reported in *Bayard's Notebook, 148.*

READ, C. J.   The survey was made within six months, *viz.* May 1, 1759.

*Ridgely.*   "Legally claiming," 4 Vol. 276,[1] was construed as giving a right only to those who had a legal title; and we urged that Messrs. Wright could not have any title, for it was forfeited.

READ, C. J.   Does the first section mean anything more than grants completed by patent?   And the second section supplies that defect.

*Ridgely.*   If the first section means only patent lands, Messrs. Wright are equally affected by it as we are.   Upon the same principle Morris would have the title that Wright claims.

BASSETT, C. J.   Do you mean, *Mr. Ridgely,* that where all the terms of each warrant mentioned in the first and second sections have not been specifically performed, that those warrants are void?

*Ridgely.*   Yes, for if the Act of Assembly went further, all the void warrants in the newly acquired parts of the State from Maryland would have been equally confirmed with those that are good.   The Act of Assembly from Maryland confirms me that unless that Act had been made nobody could have obtained patents or confirmations of their forfeited warrants, and the Act considers such warrants as the Messrs. Wright's only as applications.

READ, C. J.   The Act was designed to prevent the land officers from carrying into execution such regulations as Baltimore had given them in suffering a discoverer to take the advantage of the forfeiture.   After two years this proclamation warrant (Wright's) was either voidable or void, which you will consider.

*Ridgely.*   The laying of our warrant in 1773, which had been granted in 1732, was after Wright's warrant was forfeited, and is such an appropriation as destroys his warrant and will have the same effect as if it had been taken out in Maryland under Baltimore.   It is a rule that a located warrant shall have preference to one of another kind until it is laid, but when laid that one shall have preference for all not strictly within the location of the first, and this is what is established by the case of *Smith v. Proc-*

---

[1] This reference is to the volume of Delaware Session Laws for the January regular session, 1794.   The statute is also in 2 Del. Laws 1174.

*tor.* The paying a tax for the land does not procure acknowledgment of title on the part of the State, for the vacant land would then be all granted by accepting of taxes. If in 1732 by agreement between the Proprietaries no warrant shall issue for land in dispute until settled, Wright's warrant in 1758 could not regularly have issued and is void for the officers had no authority to issue such warrant.

READ, C. J. The agreement between the Proprietaries was construed by both of them as only preventing the granting patents, for each of them issued warrants for the disputed lands. These lands were applied for before the agreement between the Proprietaries; I would wish to hear you upon what effect this agreement may have upon these particular warrants.

*N.B.* In a further stage of the cause, READ, C. J., discovered by searching the printed articles of agreement that they contained no such stipulation; but it was implied in the assent of the Proprietaries to the king's proclamation dated August 18, 1737, which prohibited both the granting and settling the disputed lands by either Penn or Baltimore. This appeared by a copy of the proceedings in council at Annapolis in 1738 reciting the last proclamation. And READ, C. J., said, "I think the royal order was a good and effective one, for it was for the public peace."

*Wright* in answer. Although the Proprietaries were prevented from granting lands until their dispute should be settled, yet they were not prevented from agreeing to grant lands thereafter. This prevented our completing our title by patent, but we are not to be blamed if the Proprietary would not grant, and are not liable to forfeit for an act not our own. The governor's proclamations were not and had not the effect of laws; they were a direction to be pursued by the officers, but if they did not pursue them and the grants were variant, they were good and stood unaffected by the proclamations. Morris' warrant was in 1720 and before the Proprietaries were prevented from granting and therefore might be proclamated; ours since and could not. Pennsylvania could not grant until September 2, 1775, the time of the confirmation of the divisional lines by Act of Assembly, and this time lasted only until the 4th of July, 1776, and the next opportunity we had was since the opening this land office.

READ, C. J. The Act of September, 1775, had relation to April, 1775, the time of settlement.

*Wright.* In Pennsylvania title commences with and is counted from the date of the warrant, in Maryland from the grant. That

encouraged by 4 Vol. 276 [2] he applied here for a patent and thought Maryland surveys and grants were upon an equal footing with those of Pennsylvania.

*Bayard* for the Wrights. It has been settled by the determinations of the courts that in case of a general warrant the right only commences with the date of the survey. A warrant, if not executed in Maryland in two years, was not void, but only that another person might annul it by taking the same lands; and the practice will be the proper construction of the words of the governor's proclamations which say they are void. Statute of Elizabeth declares that ecclesiastical leases for more than 21 years "should be void," yet it has been determined that a lease of such kind for thirty years is good for 21 years.

*Miller* in reply. These leases are to be considered as void as to everybody except between the lessor and lessee. The discoverer of lands not paid for in Maryland might have been an inhabitant anywhere else, and such a one, if he lived in Delaware, preferring Penn's title, might as well take out a warrant in Pennsylvania as in Maryland and have as good a right to them. The terms of the warrants create a condition precedent, and if the Messrs. Wright could not get a patent, they should have done their duty and paid the caution money.

BASSETT, C. J. Can any instance be shown where the officers for the Proprietary of Maryland ever received the caution money and did not give out a patent?

*Miller.* I know of none, but this is no excuse for the appellants; they ought to have done everything which was required as a condition precedent to their obtaining a title. As the Messrs. Wright's claim under the Act of Assembly, 4 Vol. 276, s. 1, 2, [3] because their warrant and survey is prior to 1760, so this Court will not determine the matter of title between us, but let us also under the same Act, because our warrant is prior to 1760, take out a patent for the same land.

### August 5, 1796.

KILLEN, CHANCELLOR. The Court are unanimously of opinion that the appeal, *Scotten et al. v. Wright,* be dismissed and that the other be affirmed. The leading principle upon which the court decide is that they consider that Wright has a legal claim to the property, so that the Commissioners of the land office did

---

[2] *Ibid.*

[3] *Ibid.*

right in granting the patent. His right is the same as if it were derived from the land office in Pennsylvania.

READ, C. J. The simple question is, was this warrant of Wright's legally in existence at the time our Act passed? And the Court think there was nothing done in Maryland, according to their regulations of the land office, which could or did avoid it. It was therefore such a warrant as is described in the second section of the Act alluded to; and Mr. Wright had so far proceeded in Maryland as now to entitle him to have the lands secured, having done there all that could be done. The Court conceive it improper to decide anything except the principal question upon which the whole contest turns. Nothing was done in Maryland to vacate the proceedings under Wright's warrants. The Court therefore consider this case as clearly within the general legislative provision contained in the second section of our own Act. As to the determination of the Commissioners in granting a patent to James Scotten and others, the Court adjudge that the same be reversed and that the patent to Wright be affirmed, as they think it to have been improper for the Commissioners to have made orders for patents to two parties contending for the same land.

The other judges accordant.

On the subject of assigning the causes of appeal in future practice, it was observed by READ, C. J., that it was expected on appeals that the appellant in his petition should concisely state his case and assign his causes of appeal, it being in conformity to the practice in England on appeals to the House of Lords as well as directed by the constitution of this state, that a statement of the case should be made by the counsel concerned on either side and furnished to the Court by them for the better information of the Court, of the matters or points in controversy between them. In appeals from the Commissioners of the several land offices, the statement of the case may barely refer to the plot returned.